UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD TIMBOE,<br><br>        Plaintiff,<br><br>    v.<br><br>WESLEY CLARK, et al.,<br><br>        Defendants. | Case No. 3:20-cv-08719-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 53 |

Plaintiff Todd Timboe alleges that the defendants in this suit fraudulently induced him into a short-term, high-payout loan on a troubled hotel project. The defendants move to dismiss, arguing that Timboe's claims are barred by statutes of limitations and are inadequately pleaded. The motion to dismiss is granted because, as currently pleaded, the claims are time-barred. Timboe has leave to amend most of the claims so that he can adequately plead tolling or delayed accrual under various doctrines. The dismissal is with prejudice on two claims under the California Corporations Code.

If any defendants move to dismiss the amended complaint, they must again coordinate to file a consolidated motion. The parties may submit a stipulation and proposed order on an extended timeline to brief that motion if they wish.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

Timboe is a resident of Montana. Complaint ("Compl.") [Dkt. No. 1-2] ¶ 1. On January 12, 2017, he saw a post on the website DealStream that read:

> Jan 10, 2017 – Looking for a High-Yield, Short-Term Investment?  A seasoned world-class development team seeks short term bridge loan for world-class 5-Start [sic] Luxury Hotel on Monterey Bay, CA.  Great Terms: 26.66% Exit Fee + 20% Equity Kicker with

> 180 Day Maturity. (Example: $1 million investment made on Jan 11, 2017 returns $1,266,600 and $200,000 Equity Position on July 1, 2017). Minimum Investment: $500,000/Maximum investment: $1 million. Steve Heraty [and Heraty's phone number and email address].

*Id.* ¶ 15. Heraty is a defendant in this case. While Timboe was "skeptical" of this deal and thought it "sounded too good to be true," he emailed Heraty about it. *Id.* ¶ 16. Heraty and Timboe spoke on the phone. *Id.* The investment, Heraty told Timboe, was for a development project called "Project Bella." *Id.* The goal was to build a five-star hotel on the Monterey Peninsula; it would be the fifth "LEED Platinum" hotel in the U.S. and seventh in the world. *Id.*

Heraty told Timboe that defendant General (Ret.) Wesley Clark was a "co-manager and principal owner" of the development corporation, defendant Domaine Hospitality Partners, LLC ("DHP"). *Id.* Later that day, Heraty sent Timboe an investor presentation. *Id.* ¶ 17. That presentation claimed that the project was being "led" by Clark; had "strong local support," including a successful local election that re-zoned the property at issue; had support of nearby institutions; was led by a team with "excellent credentials" and "deep experience"; and that the requisite environmental approvals because of support from locals and the city. *Id.* Though the initial proposal was for a 180-day maturity date, Timboe told Heraty he was interested in a 120-day one and was looking at other options. *Id.* ¶ 18.

On January 13, 2017, defendant Chris Sabbe emailed Timboe proposed terms for a 120-day bridge loan to help fund the project. *Id.* Timboe alleges that the defendants made various representations about the terms of the transaction that were false. Sabbe told Timboe that the exit fee—that is, the amount Timboe would be paid at the end of the bridge period over the loan amount—would be treated as "ordinary income" for tax purposes. *Id.* ¶ 20. He also said that the project's investors had previously converted the loan to equity, rather than take the exit fee; according to Timboe, that statement was false because many investors had actually sought repayment. *Id.* While some were repaid, others were "lied to" and had not been. *Id.*

In a January 18, 2017, email exchange, Sabbe wrote that defendant Domaine PG LP Investors LLC ("Investors") would lend the money Timboe gave to defendant Domaine Pacific Grove LLC ("PG"). *Id.* ¶ 21. He also wrote that PG "owns the 99-year lease asset" on the land.

2

*Id.* Timboe claims that this too was untrue because "PG did not own a 99-year lease or any other lease . . . associated with Project Bella." *Id.* ¶ 22.

That same day, defendant Ronald Meer, CEO of some of the Domaine entities, called Timboe. *Id.* ¶ 23. Meer "told Timboe the 99-year lease had been secured, was worth twenty-five million dollars or more," and that the lease "secured Timboe's loan." *Id.* He also reiterated many of the other alleged positive attributes of the project discussed above. *Id.* Meer represented that Timboe's funds would not be used to pay the previous investors. *Id.* He also said that he had personally invested more than $200,000 in the project. *Id.* Meer said that Clark was a "general partner" and "active leader" of the project; he also said that Clark had met with the landowner "to secure the 99-year lease." *Id.* ¶ 24. Timboe alleges that these statements were false and that he relied on them when agreeing to the loan. *Id.* ¶ 25. According to him, Meer intended to use Timboe's funds to repay a previous investor, to pay Sabbe, to pay legal fees, and to pay defendant Bear Capital Partners ("Bear Capital"). *Id.* ¶ 26. He alleges that Meer had "taken substantial compensation" through Bear Capital. *Id.*

In addition to these allegedly false statements, Timboe alleges that Heraty, Sabbe, and Meer omitted material facts. *Id.* ¶ 28. He asserts that they should have disclosed that Project Bella was "insolvent," that the Domaine entities had "no substantial cash available" to them, and that they "owed hundreds of thousands of dollars" to various other entities. *Id.* He also alleges that they should have revealed "substantial litigation risk" from previous investors who had not been paid. *Id.* He says that they should have disclosed that their leadership lacked any "significant hotel development experience." *Id.* And he claims that they should have revealed several miscellaneous facts, such as Meer having been found to be a "bad actor" under the securities laws, that the "local support" had diminished substantially, none of the Domaine entities had ever filed taxes or maintained records, and that they were engaged in self-dealing. *Id.*

Timboe purchased a note for the loan on January 20, 2017, and wired $500,000 to an account owned by Investors. *Id.* ¶ 27. The loan was for the 120-day period. The loan documentation did not discuss a 99-year lease, it discussed the *option* for a 99-year lease. *See id.* ¶ 28. Timboe alleges, though, that even that option "had lapsed" by the time he agreed. *Id.*

3

Timboe filed a sworn declaration with his brief in opposition to a previous (now moot) motion to dismiss that includes assertions about what happened after he agreed. *See* Declaration of Todd Timboe ("Timboe Decl.") [Dkt. No. 21]. It is improper to analyze a document like this on a 12(b)(6) motion because it is not part of the complaint or subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). I will disregard it and, as explained below, grant leave to amend to add the allegations. I note for background purposes that Timboe avers, essentially, that he received updates from Meer over the course of the life of the loan, including that the project's funding was delayed. Timboe Decl. ¶¶ 1–2. Even though he was not paid on time in May 2017, Timboe claims that he was frustrated but not yet concerned due to the reassurances and Clark's involvement. *Id.* ¶¶ 2–3. In February 2019, Timboe received a call from a former Domaine partner and founder of Project Bella, who told Timboe that he resigned when he came to believe that it was "behaving unethically" and he was planning to sue. *Id.* ¶ 5. And he was told that the 99-year lease never existed. *Id.* ¶ 6. The reassurances continued from the defendants until Timboe filed this suit. *Id.* ¶ 9.

## II.   PROCEDURAL BACKGROUND

Timboe filed suit in state court on October 29, 2020, and defendant Enverra Partners LLC ("Enverra") removed the case to this court in December 2020 on the basis of both federal question and diversity jurisdiction. Dkt. No. 1. The Complaint brings seven claims, six of which are brought under California state law: (1) fraud, (2) securities fraud (3) federal securities fraud, (4) breach of fiduciary duty, (5) breach of the duty of reasonable care, (6) violation of California Corporations Code § 25501.5 (for sale of securities by an unlicensed broker-dealer), and (7) violation of California Corporations Code § 25503 (for sale of an unregistered security).

The case was assigned to the Hon. Lucy Koh. Dkt. No. 5. That month, Clark moved to dismiss. Dkt. No. 14. In March 2021, after some preliminary proceedings, Judge Koh denied Clark's motion to dismiss because she would "not permit serial motions to dismiss filed by individual defendants." Dkt. No. 43. She ordered that the defendants file "one consolidated motion to dismiss." *Id.* The defendants filed that motion in June 2021, set to be heard in November 2021. Dkt. No. 53. Judge Koh vacated that hearing but, soon after, was confirmed to

1  the U.S. Court of Appeals for the Ninth Circuit. Dkt. Nos. 60, 61. On January 13, 2022, the case
2  was reassigned to me. Dkt. No. 70. I set a hearing on the motion for March 30, 2022. Dkt. No.
3  74.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Under FRCP 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

The defendants argue that the claims are time-barred and inadequately pleaded. *See generally* Defendants' Consolidated Motion to Dismiss ("Mot.") [Dkt. No. 53]. For the reasons that follow, I conclude that the claims are time-barred on the face of the complaint and that Timboe has not adequately pleaded the various doctrines he invokes to make them timely. Because I resolve the motion on this basis, I need not and do not resolve the defendants' pleading argument. That said, the defendants raise a number of weighty issues about Timboe's ability to state his claims. When Timboe amends his complaint, he should take due account of their arguments and remedy whatever deficiencies he can.

A motion to dismiss based on a statute of limitations can only be granted when its running "is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (internal quotation marks and citation omitted). Although the expiration of a statute of limitations is an affirmative defense, Timboe bears the burden of adequately pleading tolling. *Hinton v. Pac. Enterprises*, 5 F.3d 391, 395 (9th Cir. 1993). The state claims are governed by state law in both their length and when they accrue; the federal claim is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 288 (2007).

**I.  OVERARCHING ISSUES**

Broadly speaking, the defendants argue that Timboe would have been on sufficient notice of any alleged fraud to trigger the discovery rule at the latest by May 20, 2017, because that is the date that the loan should have been paid back but was not. Mot. 8. They contend that, when payment failed to occur, Timboe was on sufficient notice to inquire into why and discover the alleged fraud that led to him not being paid. *Id.* I first address three issues that apply to all or some of the individual claims and then turn to those claims' individual statutes of limitations.

6

### A. COVID-19 Tolling

Timboe first argues that, even if the correct accrual date were May 20, 2017 (he argues it is not), COVID-19 tolling applies to save some of his claims. *See* Opposition to the Mot. ("Oppo.") [Dkt. No. 58] 4–6. The defendants counter that COVID-19 tolling does not apply in federal court. Mot. 5. I agree with Timboe that the special rule that tolled statutes of limitations to address the COVID-19 pandemic applies in federal court when assessing California claims.

Emergency Rule 9(a) of the Judicial Council of California was enacted as part of the California judiciary's attempt to respond to the pandemic; it provides, "[n]otwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." California Rules of Court, Em. R. Related to COVID-19 9 (am. May 29, 2020).

It is established law that "[a] federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations. Federal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) (citations omitted). As a result, this tolling rule, like all state tolling rules, applies to a federal court sitting in diversity.

To resist this, the defendants argue that this tolling rule is procedural and, under the *Erie* doctrine, cannot apply in federal court. Mot. 9. To escape the holding that statutes of limitations and their tolling rules are substantive, not procedural, under *Erie*, the defendants contend that California state law limits the Judicial Council to "adopt[ing] rules for court administration, practice and procedure, and perform[ing] other functions prescribed by statute," Cal. Const. art. VI § 6(d), so it lacked power to promulgate a substantive rule.

The defendants' argument conflates two different uses of the term "procedural." Whether California describes something as "procedural" for purposes of state law does not mean it is "procedural" under *Erie*. The terms "procedural" and "substantive" under *Erie* are neat labels for much more complicated tests. To call something "substantive" is really to "ask[] whether applying federal law instead of state law would significantly affect the litigation's outcome." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (internal quotation marks

7

and citations omitted). There is no "rote litmus test," for whether something is substantive or procedural under *Erie*. *Id.* Certainly, the test is not what label the state uses. It is hornbook law that state tolling doctrines apply to federal courts hearing state claims in diversity, and the defendants' elision of different uses of "procedural" does not change that. How California decides to empower its agencies is a matter for it. But the Judicial Council has promulgated a binding rule about tolling and that rule applies here.[1]

In the alternative, the defendants argue that Timboe has not pleaded tolling in the complaint. Because that tolling occurred by order of the Judicial Council and applies in all cases, it is not settled one way or the other that it needed to be pleaded, though at least one court has suggested it might be required. *See Huitt v. Teva Pharms. USA, Inc.*, No. 220CV00954WBSKJN, 2020 WL 5642369, at *4 n.1 (E.D. Cal. Sept. 22, 2020) (requiring a plaintiff to add COVID-19 tolling to the complaint, but noting that the issue had been raised for the first time at oral argument, not in the complaint *or opposition*). In any event, Timboe's brief represents that he can add this allegation; to avoid any potential issues and to streamline the dispute, I will grant leave to amend to add COVID-19 tolling. I analyze several claims under that tolling rule anyway to avoid another round of litigation after amendment.

### B. Failure to Plead Discovery

A second issue that runs through most of the claims is whether Timboe adequately pleaded the manner of discovery. As explained below, many of the parties' disputes turn on this issue as well.

Under California law, the discovery rule generally "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). A reason to discover exists when the plaintiff has reason "at least to suspect a factual basis for its elements." *Id.* (internal quotation marks and citation omitted). To rely on this rule, "a plaintiff must plead: (1) the time and manner of

---

[1] The defendants rely on *Harris v. Restivo*, but that case just stated in dictum that it was "not clear" whether the rule applied in federal court and that it would not matter to the case if it did. No. 120CV00797EPGPC, 2020 WL 3173035, at *1 n.1 (E.D. Cal. June 15, 2020)

8

1    discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at
2    808.  "California law makes clear that a plaintiff must allege specific facts establishing the
3    applicability of the discovery-rule exception." *California Sansome Co. v. U.S. Gypsum*, 55 F.3d
4    1402, 1407 (9th Cir. 1995).

5    The single federal claim here (the federal securities claim) has a discovery rule too—
6    though one slightly different than its California cousin.  Under that statute, discovery has been
7    interpreted to "encompass[] not only those facts the plaintiff actually knew, but also those facts a
8    reasonably diligent plaintiff would have known." *Strategic Diversity, Inc. v. Alchemix Corp.*, 666
9    F.3d 1197, 1206 (9th Cir. 2012) (internal quotation marks and citation omitted).  "Inquiry notice"
10   is not alone sufficient except "the extent that [it] identif[ies] a time when the facts would have
11   prompted a reasonably diligent plaintiff to begin investigating." *Id.* (internal quotation marks and
12   citation omitted).  But "[t]he limitations period does not begin to run until the plaintiff discovers or
13   a reasonably diligent plaintiff would have discovered the facts constituting the violation,
14   irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id.*
15   (internal quotation marks, alteration, and citation omitted).

16   Here, Timboe has not pleaded the manner in which he discovered the alleged fraud, so it is
17   not possible to effectively analyze the timeliness of his claims.  (As noted, I cannot take into
18   account his newly filed sworn declaration for present purposes.  *See supra* Background Section I.)
19   As I have previously explained, Timboe must "plead the particulars of when and how he
20   discovered the alleged fraud; otherwise, there is no way for [the defendants] to fairly challenge it
21   or for me to adjudicate whether the claim is tolled.  If, for instance, [Timboe's] discovery of the
22   alleged fraud is revealed to be the result of a [] warning sign that had occurred previously, he may
23   not be able to invoke the exception." *Johnson v. Glock, Inc.*, No. 3:20-CV-08807-WHO, 2021
24   WL 1966692, at *4 (N.D. Cal. May 17, 2021) (citation omitted).  This pleading failure would, on
25   its own, be fatal to all claims for which Timboe invokes the discovery rule.  It is also possible that
26   Timboe's pleading about discovery would show that the rule was triggered *before* May 20, 2017.
27   I explain below, however, several more particular reasons the lack of adequate pleading about the
28   discovery rule requires dismissal with leave to amend.

### C. Fraudulent Concealment

The third issue that affects all statutes of limitations is Timboe's argument that the defendants are "estopped" from asserting a statute-of-limitations defense at all. *See* Oppo. 15–16. Timboe invokes a purported estoppel principle of California law that "[w]here a party fraudulently conceals the existence of a cause of action against him, the statute of limitations is tolled and the guilty party is estopped to plead the limitations." Oppo. 15 (quoting *Mills v. Mills*, 147 Cal.App.2d 107, 119 (1956)).

Although Timboe frames the issue as one of estoppel (and the Court of Appeal used the word "estopped"), this principle is really one of fraudulent concealment, which exists in modern California law as a tolling doctrine. *See, e.g.*, *Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1316 (Fed. Cir. 2012) (treating *Mills* as being about fraudulent concealment tolling). That doctrine "tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). But "that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637 (2007).

Timboe's assertions about fraudulent concealment, however, are the same as when it comes to discovery. While he attempts to rely on the misrepresentations that occurred *before* the non-payment, the question is whether there was fraudulent concealment that would have prevented him from discovering the defendants' wrongdoing in light of that nonpayment. To adequately plead fraudulent concealment, Timboe must "(1) plead with particularity the facts giving rise to the fraudulent concealment claim and (2) demonstrate that he or she used due diligence in an attempt to uncover the facts." *Vanella v. Ford Motor Co.*, No. 3:19-CV-07956-WHO, 2020 WL 887975, at *5 (N.D. Cal. Feb. 24, 2020) (internal quotation marks and citation omitted). That has significant overlap with what he would plead to support his use of the discovery. I grant Timboe leave to amend to add his unpleaded representations.

## II. SPECIFIC CLAIMS

### A. Actual Fraud, Breach of Fiduciary Duty, Breach of the Duty of Care

If COVID-19 tolling were properly pleaded, the fraud, breach of fiduciary duty, and breach

10

of the duty of care claims would be timely as things now stand. I note, however, that Timboe's more detailed pleading about his discovery and diligence may change this conclusion (by showing, for instance, that the claim accrued even earlier than May 2017).

The general civil statute of limitations (for actions other than recovery of real property) is three years. Cal. Civ. P. Code § 338. Under California law, "[a]n action for relief on the ground of fraud or mistake . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id.* § 338(d). California's discovery rule, as explained, provides that a claim accrues "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988). The parties dispute whether the two breach claims are subject to a three- or four-year statute of limitations, but assuming without deciding that the shorter three year one applies, it is subject to the same analysis as the fraud claim and would survive.

If COVID-19 tolling applies, these claims are timely even under the defendants' most restrictive argument and taking the shortest possible length of the statutes. That is, even if the claims accrued on May 20, 2017, those claims would be timely if COVID-19 tolling applies. That is because the claims would not have accrued on this theory until May 20, 2020, after COVID-19 tolling kicked in on April 6, 2020. That tolling added 178 days to the clock, meaning the claims would have run on November 14, 2020, after this suit was filed.

### B. Securities Fraud Claims

Under both California and federal law, a securities claim can accrue in two different circumstances: a longer period from when the violation occurred or a shorter period from when the discovery rule would apply. *See* 28 U.S.C. § 1658(b); Cal. Corp. Code § 25506(b). Under both bodies of law, the action accrues either five years from when the violation occurred or two years from the plaintiff's discovery. *See* 28 U.S.C. § 1658(b); Cal. Corp. Code § 25506(b). Under California law, as noted, discovery occurs "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her," which only requires "notice or information of circumstances to put a reasonable person on inquiry." *Jolly*, 44

11

1   Cal. 3d at 1110–11.  The similar federal-securities discovery rule is discussed above.  *Supra*

2   Section I.B.

3          The defendants argue that these claims accrued no later than May 20, 2017, when the loan

4   should have been paid under its terms for the reasons stated above.  Mot. 11–12.  Timboe's

5   Opposition primarily argues that non-payment on a loan need not occur because of fraud and that

6   various defendants reassured him after the non-payment—assurances he reasonably relied on.  The

7   problem, however, is that none of this is pleaded in the complaint.  Instead, Timboe just relies on

8   his improper declaration.  *See* Oppo. 1–3 (citing declaration), 8–9 (same); *supra* Background,

9   Section I (declining to consider declaration).  If Timboe is able to plausibly plead, as he argues,

10  that he reasonably relied on post-non-payment representations, his claim may not have accrued at

11  non-payment because he would not have actually discovered—and should reasonably not have

12  discovered—the facts constituting the fraud.  *See Strategic Diversity*, 666 F.3d at 1206; *Jolly*, 44

13  Cal. 3d at 1110–11.  Accordingly, he has leave to amend to actually plead these allegations.

14         The defendants argue that, even if Timboe could make these allegations, claims like this

15  accrue when non-payment occurs as a matter of law.  Even assuming their leading case is good

16  law (it was issued in 1936 and did not apply a particular accrual standard), I cannot say it would

17  make amendment futile.  There, the court did appear to suggest that a fraud-in-the-inducement

18  claim accrued when payment was not timely made.  *Kelly v. Longan*, 5 Cal. 2d 274, 276 (1936).

19  But in that case, the court found that there was not a "full and complete showing of the times and

20  circumstances under which the facts constituting the fraud were brought to plaintiff's knowledge

21  necessary to enable the court to determine that the facts were, for good reason shown, not

22  discovered before the three-year period."  *Id.* at 277.  Here, I grant Timboe leave to amend to fully

23  flesh out his alleged reliance on the defendants' post non-payment statements and to plead how he

24  discovered the fraud, so that this precise showing can be made.  The defendants' more recent

25  district court cases similarly did not hold or suggest that no facts—including those fraudulently

26  concealed—could delay accrual beyond the non-payment.  *See Purvis v. Arcadis U.S., Inc.*, No.

27  2:13-CV-00582-GEB, 2014 WL 1389778, at *4 (E.D. Cal. Apr. 9, 2014); *Mills v. Ramona Tire,*

28  *Inc.*, No. 07CV52-MMA(AJB), 2009 WL 1456691, at *5 (S.D. Cal. May 22, 2009).

United States District Court
Northern District of California

12

### C. California Corporations Code § 25501.5

Timboe's Section 25501.5 claim is subject to a different analysis. Under that statute, as relevant here "[a] person who purchases a security from . . . a broker-dealer that is required to be licensed and has not, at the time of the sale . . . , applied for and secured [the proper license], may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages." Cal. Corp. Code § 25501.5(a)(1). This statute is not like the other causes of action in this case; it is about a licensure failure, not fraud in the inducement.

California courts have not definitively decided whether the statute of limitations for this section is two or three years. *See Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1066 (N.D. Cal. 2013) (so noting). But, here, the claim accrued in January 2017, so the case was late under either length and even with COVID-19 tolling. Timboe's brief includes no discussion or dispute on this matter. Accordingly, that claim is dismissed without leave to amend as time-barred.

### D. California Corporations Code § 25503

California Corporations Code § 25503 is also subject to a different analysis than the fraud-based claims. That section imposes liability for violations of several other statutes. Relevant here, those other statutes require that securities sales be qualified according to a statutory process. *See* Cal. Corp. Code §§ 25110, 25133, 25219. Again, therefore, the sale (not the underlying fraud) creates liability. A claim under Section 25503 must be brought "before the expiration of two years after the violation upon which it is based or the expiration of one year after the discovery by the plaintiff of the facts constituting such violation, whichever shall first expire." Cal. Corp. Code § 25507(a).

This case was brought more than two years after the violation and COVID-19 tolling would not save it. Timboe makes no argument about delayed discovery; indeed, his brief does not address the issue at all. Accordingly, this claim is dismissed without leave to amend as time-barred.

### CONCLUSION

The motion to dismiss is GRANTED WITH LEAVE TO AMEND on claims one, two, three, four, and five. It is GRANTED WITH PREJUDICE on claims six and seven. An amended

13

complaint shall be filed within 20 days.

**IT IS SO ORDERED.**

Dated: March 31, 2022



William H. Orrick
United States District Judge